IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JUSTIN M. D., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 21-cv-00347-SH |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Justin M. D. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits.

**I.    Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test

has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Background and Procedural History

Plaintiff applied for Title II disability benefits on February 21, 2020, with a protective filing date of February 19, 2020. (R. 15, 183-86.) In his application, Plaintiff alleged he has been unable to work since February 13, 2020, due to conditions including congenital postural scoliosis, general anxiety, major depression disorder, and affective disorder. (R. 183, 213.) Plaintiff was 39 years old at the time of the ALJ's decision. (R. 29, 183.) Plaintiff has a college education and past relevant work as a pollution control technician, technical publication writer, operator engineer/heavy equipment operator, fish hatchery worker, and laboratory technician. (R. 61-62, 214.)

Plaintiff's claim for benefits was denied initially and upon reconsideration. (R. 102-05, 114-19.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted on March 24, 2021. (R. 34-67, 120-22.) The ALJ then issued a decision denying benefits and finding Plaintiff not disabled. (R. 15-29.) The Appeals Council denied review on July 13, 2021 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. § 404.981. Plaintiff timely filed this appeal on August 24, 2021 (ECF No. 2), within 65 days of that order. *See* 20 C.F.R. § 422.210(c).

## III.     The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2024. (R. 17.) The ALJ then found at step one that

3

Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 13, 2020. (*Id.*) At step two, the ALJ found Plaintiff had the following severe impairments: (1) cervical and thoracic scoliosis; (2) degenerative disc disease in his back with neuroforaminal stenosis; (3) cervical radiculopathy; (4) stenosis of other cervical locations; (5) mild tremor in his left upper extremity; (6) depressive bipolar disorders; and (7) anxiety obsessive-compulsive disorder. (R. 17-18.) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (R. 18-20.)

After considering certain evidence, the ALJ concluded that Plaintiff had the RFC to perform "sedentary work as defined in 20 CFR 404.1567(a)" with the following limitations:

> [N]o climbing of ladders, ropes, or scaffolds.  Handling, fingering, feeling, reaching in all directions limited to frequent bilaterally.  Due to mental impairments, the claimant can understand, remember, and carryout simple or intermediate level instructions, and perform simple and some tasks of intermediate level difficulty under routine supervision, such that he . . . is capable of doing simple or semi-skilled work.  The claimant can maintain concentration and persist for 2-hour periods during the workday with normally scheduled work breaks between periods.  The claimant can relate to supervisors and coworkers on a superficial and work related basis and can adapt to a work situation.  The claimant can have occasional superficial contact with the general public.

(R. 20.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 20-27.) At step four, the ALJ found Plaintiff unable to perform his past relevant work as a pollution control technician, technical report writer, operator engineer/heavy equipment operator, fish hatchery worker, or laboratory technician. (R. 27.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as clerical mailer, electronics worker, and circuit board screener. (R. 28.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 29.)

**IV.   Issues**

Plaintiff raises four allegations of error in his challenge to the denial of benefits: (1) the ALJ's step-five finding was in error, as one of the representative occupations the ALJ relied on was in direct conflict with the RFC and another did not match the Dictionary of Occupational Titles ("DOT") number given by the ALJ (ECF No. 9 at 6-7); (2) the ALJ's evaluation of Dr. Justin Walker's opinion was out of step with the requirements of 20 C.F.R. § 404.1520c (*id.* at 7-9); (3) the ALJ failed to properly consider Plaintiff's symptoms under Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 (Oct. 25, 2017) and 20 C.F.R. § 404.1529(c)(3), wrongly discounting his treatment as "conservative" and downplaying his reports of increased pain (*id.* at 9-12); and (4) the ALJ failed to comply with SSR 96-8p, 1996 WL 374184 (July 2, 1996) in coming to the RFC, specifically regarding Plaintiff's alleged neck-related symptoms (*id.* at 12-13). The Court agrees that the ALJ's step-five findings were in error and, therefore, does not reach Plaintiff's other arguments.

**V.   Analysis**

Once Plaintiff has met his burden of showing that he could not perform his past relevant work, the Commissioner had the burden "at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given [his] age, education, and work experience." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005) (alteration omitted)). An ALJ may rely on the testimony of a VE to satisfy the step-five burden and identify jobs that a claimant can perform—so long as all the RFC limitations are reflected in the

hypothetical question propounded to the VE.  *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).[1]

In this case, the ALJ posed a hypothetical question to the VE that matched the RFC assessment set forth above, and the VE identified three sedentary, unskilled jobs a hypothetical person of Plaintiff's age, education, and work history could perform: clerical mailer, electronics worker, and circuit board screener.  (R. 20, 62-64.)  The VE testified there were 32,000 clerical mailer jobs, 19,600 electronics worker jobs, and 48,000 circuit board screener jobs in the national economy.  (R. 64.)  Based on this testimony, the ALJ concluded Plaintiff could perform the jobs of clerical mailer, electronics worker, and circuit board screener and found these jobs (which totaled 99,600) existed in significant numbers in the national economy.  (R. 28-29.)  The ALJ also determined that the VE's testimony was consistent with the information contained in the DOT.  (R. 28.)

### A.   Conflict Between the DOT and the VE's Testimony

While an ALJ can rely on the VE's testimony at step five, this reliance has its limits. An ALJ has a duty to develop the record, which includes questioning the VE about the source of her opinions and any deviations from publications like the DOT.  *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999).  As such, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability."  *Id.*; *see also* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("When there is an apparent unresolved conflict between VE . . . evidence and

---

[1] In *Qualls*, the court found, where the ALJ "propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment," "the VE's answer to that question provided a proper basis for the ALJ's disability decision."  *Id.*

6

the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a . . . decision about whether the claimant is disabled.").

In this case, the conflict between the VE's testimony and the DOT relates to one job's "reaching" and "handling" requirements as applied to the physical limitations in the RFC. The DOT indicates that the electronics worker (or "wafer breaker, semiconductors") job requires the ability to "reach" and "handle" constantly, or "2/3 or more of the time" during the workday. *See* DOT § 726.687-046, 1991 WL 679641 (4th ed. 1991). The RFC, however, limited Plaintiff to only "frequent" bilateral handling and reaching. (R. 20.) This means, he is only capable of reaching or handling from "1/3 to 2/3 of the time" during the workday. *See* DOT, app. C, 1991 WL 688702 (4th ed. 1991). Even the Commissioner allows this was an apparent conflict. (ECF No. 14 at 13.)

Once it appears there is a conflict between the VE's testimony and the DOT, the ALJ must resolve that conflict in a reasoned manner—and not with a generalized affirmation that there are "no conflicts." Rather, the ALJ "must explain the resolution of the conflict irrespective of how the conflict was identified." SSR 00-4p, at *4; *see also Haddock,* 196 F.3d at 1090 ("To allow an ALJ to elicit and rely on summary conclusions given by a VE, in the absence of contrary testimony elicited by the claimant through cross-examination, would amount to shifting the burden to produce and develop vocational evidence back to the claimant."). Or, as the Social Security Administration's own rulings state,

> In these situations, the adjudicator will:
>
> Ask the VE . . . if the evidence . . . she has provided conflicts with information provided in the DOT;
>
> <u>and</u>

> If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, at *4 (emphasis added).  If an ALJ only had to ask the VE if any conflict existed and move on if she said "no," then the second requirement would be superfluous.  Instead, the ruling requires the ALJ to consider whether the VE's evidence appears to conflict with the DOT and, if so, seek an explanation in that instance.  Here, there was an apparent conflict between the reaching and handling requirements of the electronics worker job as described in the DOT and the RFC-reflective, step-five hypothetical.  (R. 20, 62-64.)  Because the ALJ was required to, but did not, elicit additional testimony from the VE explaining how Plaintiff can perform "constant" reaching and handling with an RFC limitation to merely "frequent" reaching and handling, the ALJ erred in determining Plaintiff could perform the job of electronics worker.  Here, the ALJ simply asked the VE if "[a]ny part of [her] testimony . . . [was] inconsistent[,] in conflict[,] or outside the scope of the DOT . . . ."  (R. 64-65.)  While the VE indicated that it was not, as shown above, this was not true.  As such, the reliance on the job of electronics worker at step five was erroneous.

Moreover, as Plaintiff points out, the ALJ also failed to resolve the apparent conflict between the VE's testimony regarding the clerical mailer job and the DOT.  In her testimony, the VE indicated that the job of clerical mailer was described in the DOT under § 209.587-014; was unskilled, with a Specific Vocational Preparation ("SVP") level of 2; and had 32,000 jobs available in the national economy.  (R. 64.)  The ALJ made the same findings in his decision (R. 28.)  DOT § 209.587-014, however, describes a job of credit-card clerk and requires an SVP level of 3.  *See* DOT § 209.587-014, 1991 WL 671798 (4th ed. 1991).  The ALJ did not identify or resolve this conflict with the VE.  (R. 28.)  It is also unclear which occupation—the clerical mailer or the credit-card clerk—had 32,000 jobs

in the national economy. As such, there was not substantial evidence to support the ALJ's finding that there existed a job of "Clerical mailer, sedentary exertion level, SVP 2, DOT #209.587-014[,] with 32,000 jobs in the national economy," or that the VE's testimony as to this job was "consistent" with the DOT.

The ALJ erred by not resolving the conflict between the DOT and the jobs of electronics worker and clerical mailer, leaving his findings unsupported.

### B.   Sufficient Number of Jobs in the National Economy

Having found an unresolved apparent conflict between the RFC and two, but not all, of the jobs identified by the VE, the Court must now examine whether the ALJ's step-five error was harmless. The Commissioner contends that it was, because 48,000 circuit board screener jobs remain nationally.[2] (ECF No. 14 at 14.) The Court disagrees.

Under the Act, work exists in significant numbers in the national economy when it exists in such numbers either in the region where the claimant lives or in several other regions of the country. 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1566(a). Determining what constitutes a significant number of jobs is normally a question of fact for the ALJ to decide based on "common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)). Here, the ALJ did not find that the 48,000 circuit board screener jobs existed in significant numbers in the national economy. Instead, the ALJ found that, overall, there were sufficient jobs, citing occupations with a combined total of 99,600 jobs. (R. 28-29.)

---

[2] The DOT assigns the circuit board screener job a "frequent" reaching and handling requirement. DOT § 726.684-110, 1991 WL 679616. Plaintiff does not assert any conflict as to this job.

9

A finding of numerical significance as to the circuit board screener job, standing alone, is missing.

A reviewing court may supply a missing dispositive finding of fact under the rubric of harmless error where "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145. However, this Court must be cautious in "deciding in the first instance that a particular number was significant under the circumstances," because it must "avoid usurping the administrative tribunal's responsibility to find the facts" and must not violate "the general rule against post hoc justification of administrative action . . . ." *Id.* at 1144-45.

As the Commissioner notes, the Tenth Circuit has held that an ALJ's erroneous inclusion of conflicting jobs at step five was harmless error where the remaining nonconflicting jobs existed in sufficiently significant numbers in the national economy. *See, e.g.*, *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (finding 1.34 million remaining jobs in the national economy significant). The Commissioner goes on to claim that "[c]ourts within the Tenth Circuit have routinely found numbers lower than the 48,000 jobs here as being deemed significant for harmless-error purposes," citing two unpublished Tenth Circuit cases and numerous district court opinions. (ECF No. 14 at 14-15 (citing *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished) and *Lynn v. Colvin*, 637 F. App'x 495, 499 (10th Cir. 2016) (unpublished), among other cases).)

The Court turns to *Lynn* first. *Lynn* was not a case where a district court was deciding for the first instance whether a job existed in significant numbers under a harmless error analysis, but rather involved upholding an ALJ's affirmative finding that 24,900 jobs in the national economy was a significant number. *Lynn*, 637 F. App'x at 499

10

(noting that the plaintiff's argument also erroneously focused "solely on the number of available regional jobs"). As such, this case does not help Plaintiff's argument.

Second, *Rogers* was an unpublished Tenth Circuit case that "implied that 11,000 nationally available jobs [was] a significant number." (ECF No. 14 at 14.) However, while the court in *Rogers* might have implied that such a number was significant, the issue of whether that number of jobs was significant or not was never raised or discussed. *Rogers*, 312 F. App'x 142. This Court is wary of relying on such a vague implication, especially in light of *Norris v. Barnhart*, where the Tenth Circuit explicitly faced this issue and declined to find, as a matter of law, that two remaining positions—one with 65,000-85,000 jobs and one with 125,000 jobs—existed in significant numbers in the national economy. 197 F. App'x 771, 777 (10th Cir. 2006) (unpublished) ("Given the fairly small number of those two jobs, it may be necessary for the ALJ to give consideration to the factors that should direct an ALJ's resolution of the significant number inquiry.").[3] The Court also declines to rely on the remaining district court cases cited by the Commissioner (ECF No. 14 at 15), as they primarily based their findings on an interpretation of *Rogers* that the undersigned does not adopt.[4]

---

[3] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

[4] *See Jones v. Colvin*, No. CIV-14-170-RAW-KEW, 2015 WL 5573074, at *3 (E.D. Okla. Sept. 22, 2015); *Fox v. Colvin*, No. CIV-14-489-R, 2015 WL 5178414, at *3 (W.D. Okla. Sept. 3, 2015); *Robben v. Saul*, No. CIV-20-173-SM, 2021 WL 433202, at *4 (W.D. Okla. Feb. 8, 2021); *Sawney v. Saul*, No. CIV-19-163-SPS, 2020 WL 5652177, at *8-9 (E.D. Okla. Sept. 22, 2020); *Washington v. Saul*, No. 18-1286-EFM, 2019 WL 4080925, at *4 (D. Kan. Aug. 29, 2019); *Sly v. Berryhill*, No. CIV-17-781-BMJ, 2018 WL 1954836, at *3 (W.D. Okla. Apr. 25, 2018). In *Garcia v. Saul*, the district court simply noted that the remaining 24,000 jobs were "undoubtedly . . . more than sufficient to meet the Commissioner's burden, and [that] plaintiff does not specifically argue otherwise." No. 18-CV-00917-REB, 2019 WL 3802105, at *4 (D. Colo. Aug. 13, 2019).

Here, the Commissioner asks this Court to substitute its judgment for that of an ALJ who never made a significant numbers finding regarding the circuit board screener job. Affirming the ALJ's decision would require the undersigned to supply the determination that 48,000 jobs constitutes a significant number of jobs in the national economy. So far, 152,000 is "the lowest number of jobs" the Tenth Circuit has considered to be sufficient for application of harmless error. *See Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016).[5] Given the Tenth Circuit's preference that the ALJ evaluate numerical significance in the first instance and that the district court supply a dispositive finding only in exceptional circumstances, the undersigned declines to apply the harmless error standard and conclude that 48,000 jobs in the national economy is a significant number as a matter of law, such that "no reasonable administrative factfinder. . . could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145; *see also Terry T. v. Saul*, No. 19-CV-0684-CVE-CDL, 2021 WL 981284, at *5 (N.D. Okla. Mar. 16, 2021) (declining to find 108,000 jobs significant as a matter of law); *Michele E. v. Saul*, No. 19-CV-247-JFJ, 2020 WL 5701763, at *5 (N.D. Okla. Sept. 24, 2020) (same, 50,000 jobs); *Michael A. N. v. Saul*, No. 18-CV-600-FHM, 2020 WL 417777, at *3 (N.D. Okla. Jan. 27, 2020) (same, 83,000 jobs); *Brillhart v. Colvin*, No. CIV.A. 14-1387-JWL, 2015 WL 7017439, at *6 (D. Kan. Nov. 10, 2015) (same, 39,000 jobs); *Roybal v. Berryhill*, No. CV 17-1045 JHR, 2019 WL 318387, at *7 (D.N.M. Jan. 24, 2019) (same, 42,724 jobs); *Lori B. v. Saul*, No. 2:20-CV-00044-JCB, 2021 WL 1063314, at *6 (D. Utah Mar. 19, 2021) (same, approximately 25,000 jobs). The ALJ's error at step five was not harmless.[6]

---

[5] This further supports the Court's decision not to rely on any "implications" from *Rogers*.

[6] For the same reasons, harmless error would similarly be lacking were the Court asked to find that 80,000 jobs (for circuit board screener and "clerical mailer") was significant as a matter of law.

## VI. Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 7th day of September, 2022.

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT